[No. 1368.]

## OSCAR MACKEY *v.* THE STATE.

MANSLAUGHTER—CHARGE OF THE COURT—PRACTICE.—One of the rules
governing the law of manslaughter is that, where the evidence tends to
show that the passion was aroused by an adequate cause or provocation
arising at the time of the commission of the offense, and the question is
whether or not the act was caused by the passion, the jury and not the
court should be left to pass upon the question; and in passing upon it the
jury should look to all of the facts attending the act. See the opinion *in
extenso* for a charge held error as violative of this principle, and for a
discussion of the subject.

APPEAL from the District Court of Bastrop. Tried below be-
fore the Hon. L. W. Moore.

The conviction was for an assault with intent to murder one
Dave Gillmore. The penalty imposed was a term of two years
in the penitentiary.

The opinion discloses the case. The motion for new trial as-
sailed the charge of the court and denounced the evidence as
insufficient to support the verdict.

No brief for the appellant has reached the Reporter.

*O. S. Eaton,* for the State.

HURT, J. The appellant was convicted of an assault with in-
tent to murder. The following is the evidence in the case:

Rovier, for the State, testified that he was acquainted with
Dave Gillmore and defendant Oscar Mackey. On or about May
15, 1882, the witness and Dave Gillmore were at work together
cutting wood, and while the witness and Gillmore were cutting
up a tree (witness cutting off the limbs and Gillmore standing
on the butt end of the tree which they had felled), Oscar Mackey
came up to Gillmore, and from the conversation it appeared that
Gillmore had a hat of Mackey's for which Mackey was to pay
him a dollar and a half, and Mackey had brought down a coat
to give Gillmore instead of the dollar and a half. Some other
words passed between them, and Mackey advanced to a point

within three steps of Gillmore, and they continued to quarrel and curse each other. Witness heard Gillmore say once or twice "You have a pistol on you," and Mackey answered, "Yes, I have two of them." The witness continued working on his end of the tree; and Gillmore and the defendant continued quarreling. The witness told Mackey to leave. Presently Gillmore got off the log and picked up a rotten elm root, about half as long as the witness's arm, and about half as big around as his wrist. Gillmore held the root in his right hand, clasping it about the middle, and at the same time held the ax in his left hand, with his hand near the ax itself. At that time Mackey had his hand near his side, as if he intended to draw his pistol. The witness could not say whether Mackey made the motion to draw the pistol before Gillmore got the root, or not. After picking up the root, Gillmore advanced on Mackey and struck him on the arm two or three times, the root breaking with each blow. If Mackey had not thrown up his hand to receive the blows, he might have been struck on the shoulders or head. The root was too rotten to have injured anybody but an infant. While striking Mackey, Gillmore held the ax in his left hand, and would throw it up in a threatening manner each time Mackey started to draw his pistol. A man named Smith separated them, and Mackey immediately drew his pistol and Gillmore ran off. Mackey ran after him the distance of about forty feet, and shot at him with the pistol. The witness thought that two barrels of the cylinder went off at the same time, but the transaction was so rapid he could not positively state such fact. Mackey then tried to shoot again, but the pistol hung fire. Gillmore was running during the time of this shooting. The witness then ordered Mackey to leave, and told him if he did not, he would have the witness to deal with. He said, "All right," that he would just as soon deal with the witness as anybody. The witness then asked if one dollar and a half would make him leave, and he said "Yes," and the witness then told him to come up to the house and he, witness, would pay him. He went up with the witness and the witness went into the house and got his shot gun, arrested him, took the pistol from him and brought him to town and surrendered him and the pistol to the officers. A man named Allen Moore claimed the pistol. All of this occurred in Bastrop county, Texas, and at the time it occurred Gillmore was working with the witness on Mr. Cal. Turner's farm. The witness did not know where Mackey lived at the

time, but he was not employed in any way on Mr. Turner's farm.

Allen Moore testified that at nine o'clock on the day of the difficulty between Gillmore and the defendant he, the witness, had his pistol at his house, about three miles from where the difficulty occurred. The pistol was taken from this house before that day. After Mackey was arrested, the witness came to the town of Bastrop and got his pistol from the officers.

After defining manslaughter, the court gave these charges: "If the jury believe that the defendant did shoot at Dave Gillmore, yet, if you believe Gillmore was then making an attack on him, then, had the defendant killed said Gillmore, the offense would not be murder, but manslaughter, or be justifiable, according to the character of the attack; and, if not manslaughter, the defendant would be guilty of an aggravated assault. An assault becomes aggravated when committed with deadly weapons under such circumstances as not to constitute an assault with intent to murder.

"But if the jury should believe that Dave Gillmore and the prisoner were engaged in a mutual altercation, in which the said Gillmore gave blows by means of a stick, yet, if you should believe said Gillmore desisted from said attack, retreated and fled, and that, while so fleeing, the defendant shot at him with intent to kill, then the defendant is guilty of an assault with intent to murder."

Considered in the light of the evidence, and being directly and closely connected with the charge on manslaughter, this last charge engrafts a radical qualification upon the law of manslaughter, and one by which the rights of this defendant are very seriously affected. Whether or not the shooting was prompted by malice, or terror, or passion, is the question presented by the above facts. If by terror or passion, arising from an adequate cause, death ensuing, manslaughter would be the offense. We are therefore to look to the condition of the mind of the defendant at the time of the shooting, and if this was dethroned of reason, he would not be guilty of murder, though the assailant had desisted from the attack, and was retreating. The jury are told by this last charge, in effect, that, although they may believe the shooting was not prompted by malice, but by passion arising from an adequate cause, yet, if the persecutor had desisted, and was on the retreat, the shooting would be an assault with intent to murder. It will be seen that malice is left

out of this proposition, as well as terror and passion. Nothing but murder (death ensuing) is made the result in case the party desists from the attack, is in retreat, and is killed. The most violent attacks, attended with the grossest insults, producing the highest degree of passion or terror, may be made, yet, if the party desists and retreats, though but a moment of time may have elapsed, and the defendant left with reason dethroned, still, under the law enunciated in this charge, if he should kill his assailant, he would be guilty of murder. This we do not believe to be the law.

The correct rule we believe to be this: When the evidence tends to show that the passion was aroused by an adequate cause or provocation arising at the time of the commission of the offense, and the question is presented "was the act caused by the passion," the jury should be left to pass upon this question, and not the court. In passing upon the question the jury should look to all of the facts attending the shooting.

Mr. Wharton, on this subject, says: "Whether the defendant had actually cooled between the injury received by him and the blows (shooting), is a fact to be determined inductively from a series of circumstances (e. g., the nature of the injury, the defendant's temperament, his intermediate conduct, as well as the lapse of time), in the same way as is the question of intent. The court is to charge the jury on such points, but cannot arrogate their absolute and exclusive decision." (Wharton on Homicide, 451.)

This charge (under the evidence in this case) concludes the investigation of the subject of manslaughter altogether; for there can be no doubting of the fact that the persecutor had desisted and was retreating. Hence, if the rule enunciated in the charge be law, the court should not have charged upon manslaughter at all.

A most excellent illustration of this subject of cooling time will be found in *Rex* v. *Hayward,* cited by Mr. Wharton. It is as follows:

"Where the defendant was at the house of the deceased's mother, who desired the deceased to turn the prisoner out, and he did so, giving him a kick at the time, upon which the prisoner said he would make him remember it, and went home, about three hundred yards, passed through his bedroom to a kitchen adjoining, and into the pantry, where he kept a knife, and, having got it, returned hastily and met the deceased coming

towards him with his hat, when a conversation ensued, and they walked together, when, the deceased giving the prisoner his hat, the prisoner swore he would have his rights, and stabbed the deceased in two places, saying he had served him right.   After this, the prisoner ran home, repassed through the rooms to the pantry, and went to bed, where he was shortly afterwards apprehended, and the knife found on a shelf in the pantry.   Tindal, C. J., told the jury that the principal question was whether the wounds were given by the prisoner while smarting under a provocation so recent, and showing that he might be considered at the moment not master of his understanding; in which case it would be manslaughter only; or whether, after the provocation, there had been time for the blood to cool and reason to resume its sway before the wound was inflicted; in which case the offense would be murder.   The jury found the prisoner guilty of murder."   (Wharton on Homicide, 451.)

In this case the evidence was much stronger in favor of the assumption that the defendant had become calm and that reason had resumed her sway, than in the case in hand; yet the learned judge did not arrogate to himself the right to decide the question, but left it to the jury.

We are of the opinion that the court erred in this charge; for which error the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 24, 1883.